

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| William T. Wallace, Jr., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11cv1384 (TSE/JFA) |
| | ) | |
| Lt. Dyson, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

William T. Wallace, Jr., a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he has suffered deliberate indifference to his serious medical needs at Sussex I State Prison. Plaintiff has neither paid the statutory filing fee for this action nor applied to proceed in forma pauperis. After careful review, the complaint must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for which § 1983 relief is available.[1]

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

**I.**

Plaintiff alleges that on December 2, 2010, he felt a painful "pop" in his back as he was returning to his cell after his work assignment. As time went by plaintiff's "back started pulling [him] forward" and he felt tingling down his left leg, behind his knee. Plaintiff had felt this sensation before so he filed an Emergency Grievance Form, explaining that he was in pain and needed medical treatment. Plaintiff went to an Islamic study class, and by the time he returned to his cell the pain had intensified and was so severe that plaintiff had to lie flat on the floor. Plaintiff's cellmate helped him to sit up and then Lt. Dyson, a nurse, and two corrections officers arrived, and the nurse questioned plaintiff and determined that the situation was a "medical emergency" due to plaintiff's physical incapacitation and excruciating pain. The nurse helped plaintiff to get into his bunk and told him that she would have him transferred to the infirmary in the morning, because no doctors were on site at that time. At around 11:30 p.m. a nurse came and gave plaintiff medication that made him sleep, although he still experienced pain when he woke up and moved around.

The following morning, Sgt. Gay told plaintiff he was going to be sent to medical, but medical couldn't find a wheelchair. At around 12:30, Sgt. Gay returned with two corrections officers and a wheelchair, and the two officers were directed to carry plaintiff down the stairs in the wheelchair. Plaintiff was in "extreme pain" when he arrived at the medical department, but he was left in the waiting area for one hour and 45 minutes without medication. Mrs. Butts checked plaintiff's vital signs and when plaintiff was examined by the doctor, plaintiff stated that his pain was excruciating. The doctor told Mrs. Butts he was going to order codeine for plaintiff but Mrs. Butts told him that was prohibited by policy, so the doctor ordered Motrin and Flexiral

instead.   However, Mrs. Butts refused to give plaintiff his medication until that evening, leaving

him in excruciating pain. The two officers carried plaintiff back to his cell but plaintiff was given

no bedpan, so he sat in urine "for hours."

On September 17, 2011, plaintiff filed an emergency grievance because he was

experiencing "extreme pain" in his back and groin, which "felt like someone was standing on

[his] testicles."   At around 10:45, Nurse Ryder refused the grievance, stating that plaintiff should

submit a sick call request to be seen by a doctor.  The following day, plaintiff filed another

emergency grievance, asserting that he had severe pain in his lower back and he didn't want to be

in a situation like the previous December, when he couldn't use the rest room.  That evening,

Nurse Phelps denied the emergency grievance without evaluating plaintiff and leaving him to

endure his pain.

On February 14, 2011, plaintiff filed an Offender Request, asking to be seen immediately

for "enduring unbearable" pain.  Nurse Butts refused the request, stating that plaintiff was

scheduled for sick call.  Plaintiff alleges that, "on information and belief," the Virginia

Department of Corrections ("VDOC") as a matter of policy ignores and denies all emergency

grievances and requires inmates to file sick call requests to force the inmate to make a $ 5.00 co-

payment and to wait longer in pain for an appointment.

Plaintiff has submitted several exhibits to his complaint, in the form of copies of various

institutional grievances and responses.   On December 7, 2010, plaintiff filed an informal

complaint, describing the incident of December 2 which began with the "pop" in his back and

asserting that although he "needed to be taken to medical for treatment," he was "left in the cell

unable to walk and in pain."  On December 9, an officer responded that plaintiff had been

3

assessed twice by a doctor for his back pain, and apparently that he was prescribed medication.[2]

On September 15, 2011, plaintiff filed an emergency grievance, stating that he was in extreme pain in his lower back and that because he had "been through this before" he knew that his back would not get better and would get worse.  Plaintiff alleged that he couldn't sleep, and that although he was on Motrin and "Nortrotyline" and used heat and ice on his back, he found "no comfort." Plaintiff suggested that he should be prescribed Flexeril and 800 mg Motrin like "[t]he last time this happened." That same day, Nurse Phelps responded, "Put in a sick call request." Also on September 15, plaintiff filed an offender request, essentially reiterating the allegations in his emergency grievance, and Nurse Webb responded, "You are scheduled for sick call." In addition, plaintiff submitted an informal complaint on September 15, stating that he "hurt real bad and its getting worse every day since Tuesday." On September 20, a nurse responded, "You are on the schedule tomorrow with the sick call nurse for this complaint."

On September 26, 2011, plaintiff filed a regular grievance, stating that he was in physical pain which at times was excruciating.  However, the same staff members who are named in as defendants in this action "have been allowed by [Sussex I's] policy to know of and disregard" plaintiff's serious medical need.  Plaintiff requested "[t]o be provided adequate medical care whereby this pain I am feeling right now will be alleviated and prevented." On November 7, 2011, the warden responded:

> An investigation into your complaint revealed upon notification, Director of Nursing D. Spiers states you were seen by the sick call Nurse Webb on 9/21/11, with complaints of back pain. There were no follow up visits recommended.  Your issues were addressed.

---

[2]A piece of the respondent's portion of the informal complaint was torn away, making it impossible to read his full response.

> Security staff can only assist you in medical emergencies.
>
> Your grievance is governed by Operating Procedure 720.1, Access to Health Care Services, which reflects:
>
> **Sick Call** - Care for ambulatory offenders with health care requests which are evaluated and treated in a clinic setting; it is the system through which each offender reports for and receives appropriate health services for a non-emergency illness or injury.
>
> After thoroughly reviewing the information presented by staff in response to your complaint and the policy governing the issue, I find your grievance to be UNFOUNDED.

Plaintiff appealed the warden's response, and on December 5, 2011, the Health Services Director determined that plaintiff's "complaint that [his] serious need for medical attention was been disregarded by staff" was unfounded, and stated: "As you have been advised, it is reported by Nurse Spiers that you received medical services for complaints of back pain by the sick call nurse in September 2011." Plaintiff was advised that if he continued to experience health issues, he should resubmit a sick call request for further evaluation of his medical needs and treatment plan.

In this federal action pursuant to § 1983, plaintiff alleges that the foregoing circumstances amounted to deliberate indifference to his serious medical needs, and he seeks an award of monetary damages against Lt. Dyson, Nurse Phelps, Nurse Butts, and four corrections officers.

## II.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."

Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570  (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint.  United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff

6

must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Such a claim requires two distinct elements. First, plaintiff must allege a medical need that is sufficiently serious to warrant constitutional protection. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. An assertion of negligence or even malpractice is not enough to satisfy this second prong; instead, plaintiff must demonstrate deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Additionally, plaintiff must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). A plaintiff's disagreement with medical personnel over the course of his treatment does not suffice to make out an Eighth Amendment cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990).

　　　Here, taking all of plaintiff's allegations as true, it is apparent that he is not entitled to the relief he seeks in this lawsuit, and that this complaint thus must be dismissed. As to the first component of a Eighth Amendment claim, a condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death,

7

degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Here, as plaintiff alleges that he suffers extreme pain in his back, it will be assumed that the unspecified condition which is causing the pain is one that warrants constitutional protection. Nonetheless, plaintiff's claim fails on the second element of an Eighth Amendment cause of action, because his allegations belie his assertion that defendants have been deliberately indifferent to his pain. According to plaintiff's own account and exhibits, he was seen by the institutional medical department on the several occasions when he complained of back pain, and he received various medications and palliative measures such as ice and heat. These steps bespeak neither actual intent to ignore plaintiff's back problems nor reckless disregard of that condition, cf. Miltier, 896 F.2d at 851, so an Eighth Amendment violation has not been demonstrated.

Distilled to its essence, plaintiff's claim is that the medical defendants did not act as promptly and provide care as effectively as plaintiff needed to relieve his back pain. In other words, plaintiff's claim is that he was not provided with stronger medicine as soon as he needed it. However, because the record reflects that plaintiff did receive care each time he requested it (albeit not as promptly as he wanted), the defendants cannot be said to have been deliberately indifferent to plaintiff's medical condition. Instead, at worst the care plaintiff received amounted to negligence, which is not actionable under § 1983. Miltier, 896 F.2d at 851. To be sure, the sole point of contention giving rise to this action appears to be plaintiff's implicit belief that he should have been provided more promptly with different or stronger medication than he has received, which amounts to no more than plaintiff's disagreement with the nature of his course of treatment. Such a disagreement as a matter of law does not render plaintiff's care

8

actionable under the Eighth Amendment. Wright, 766 F.2d at 849; Russell, 528 F.2d at 319.[3]

Plaintiff's allusion to the fact that he must make a co-payment when he is seen by medical personnel does not alter that result. The requirement of a co-payment for prison medical services is not per se deliberate indifference to a serious medical need. See Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997); Johnson v. Dep't of Pub. Safety & Correctional Servs., 885 F. Supp. 817, 820 (D. Md. 1995). Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim. Johnson, 885 F. Supp. at 820. Moreover, the allocation of the cost of medical care is matter of state law. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 245 (1983). Only when medical care is denied to an inmate because of inability to make a co-payment are deliberate indifference concerns under the Eighth Amendment implicated. See, e.g., Collins v. Romer, 962 F.2d 1508, 1514 (10th Cir. 1992). Since it is apparent from his allegations that plaintiff in this case was not denied medical services, the suggestion that he was required to make a co-payment for his medical visits does not state a claim for which § 1983 relief is available.

Lastly, it is noted that even if the complaint otherwise stated a cause of action, defendants Lt. Dyson and the four corrections officers could have no liability to plaintiff, inasmuch as in this circuit, "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians. misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier, 896 F.2d 848. As Lt. Dyson

---

[3]This Opinion neither addresses nor opines on the merits of any negligence claim plaintiff may have.

and the four corrections officers are not medical professionals, and because plaintiff does not allege that these defendants personally interfered with a doctor's treatment or were indifferent to medical misconduct, they appropriately would be dismissed as parties to the action even if the complaint otherwise stated a claim for which relief could be granted.

**IV.**

For the foregoing reasons, this complaint must be dismissed  pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief pursuant to § 1983.  An appropriate Order shall issue.

Entered this _____26____ day of _____January_____ 2012.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge